UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Pipe Line Contractors Association,
1700 Pacific Avenue, #4100
Dallas, Texas 75201-4675.                    )
                                             )
        Plaintiffs,                          )
                                             )
            v.                               )                COMPLAINT
                                             )
United Association of Journeymen and
Apprentices of the Plumbing and Pipefitting
Industry of the United States and Canada,
AFL-CIO, 901 Massachusetts Avenue, NW
Washington, DC, 20001 and its constituent
Local Unions                                 )
                                             )
                                             )
        Defendants.                          )
                                             )

---

## COMPLAINT

### NATURE OF ACTION

1.    Plaintiff, Pipe Line Contractors Association ("PLCA"), pursuant to Section 301 of the

      Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, brings this complaint

      against Defendant, the United Association of Journeymen and Apprentices of the

      Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("UA")

      and its constituent Local Unions, (together "Union").

2.    PLCA seeks an Order requiring the Union to submit the grievance at issue to the

      arbitration process established by the parties' collective bargaining agreement.

1

3.  PLCA seeks the recovery of damages sustained as a result of the continuing breach of the collective bargaining agreement (*i.e.*, failing to comply with the grievance/arbitration provision and submit the grievance to arbitration) by the defendant.

## THE PARTIES

4.  Plaintiff PLCA is an association organized and existing under the laws of the State of Texas.  Its principal place of business is Dallas, Texas.  Plaintiff is an association of pipeline contractors who oversee the construction and maintenance of cross-country pipelines.  PLCA contractors employ approximately 1,200 to 1,500 Union welders.

5.  Defendant Union is a voluntary, unincorporated association commonly known as a labor union.  The UA/Union is a labor organization operated for the legitimate purpose of organizing and representing employees, within the meaning of Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5).  The UA/Union maintains its principal office at 901 Massachusetts Avenue, N.W., Washington D.C., 20001-4397.  The Union's dominant pipeline Local is UA Local 798, which has its principal place of business at 4823 South 83rd East Avenue, Tulsa, Oklahoma, 74147.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this dispute pursuant to Section 301 of the LMRA, 29 U.S.C. § 185(a).  This Court also has subject matter jurisdiction pursuant to 29 U.S.C. § § 1331 and 1337, because this complaint arises under the LMRA and NLRA, federal statutes regulating commerce.

7.  This Court has personal jurisdiction over the Union pursuant to 29 U.S.C. § 185(c) and the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1), in that the

defendant is engaged in the transaction of business with the District of Columbia by representing and/or acting for its members within this district. This action relates to and arises, at least in part, out of the defendant's actions within the District of Columbia.

8.      Venue is proper in the District of Columbia pursuant to 29 U.S.C. § 185(a) because this Court has jurisdiction over the parties. Venue is also proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) because the defendant is principally located in the District of Columbia and the events giving rise to this action occurred at least in part within the District of Columbia.

## FACTS

9.      PLCA contracts with the Union to perform construction and maintenance of cross-country pipelines. As such, PLCA and the Union are parties to a collective bargaining agreement which sets forth the terms and conditions governing the welders' employment. Under this collective bargaining agreement, the welders are paid an hourly wage, hourly fringe benefits (pension, welfare, training) and a per diem amount.

10.     In addition to the hourly wage, fringe benefits and per diem, since approximately 1960, PLCA contractors have also paid Union welders an additional hourly rate for the use of the welders' welding rigs in the performance of their duties for PLCA contractors.

11.     In 2001 PLCA and the Union agreed to seek a ruling from the Internal Revenue Service ("IRS") under the Issue Resolution Pilot Program that the hourly rate paid to the Union welders for the rental of their welding rigs was a non-taxable event, such that the Union welders would not be required to claim any such income for tax purposes, nor would

PLCA contractors be required to report such income on either a Form W-2 or a Form 1099, or withhold applicable employment and social security taxes from such payments.

12.    The Union and the PLCA were jointly concerned that non-union contractors were making excessive rig rental payments to welders which was effectively disguising wages as rig rental payments and undermining the Union's wage scale.

13.    In June 2002, the IRS issued Revenue Procedure 2002-41, 2002-1 CB 1098 (June 10, 2002), which established a substantiated hourly rig rental rate of $6.00 per hour if the contractor provided fuel for the rig, and $13.00 per hour if the welder provided his own fuel. By virtue of Revenue Procedure 2006-53, those hourly amounts increased to $8.00 per hour and $15.00 per hour respectively, as of January 1, 2007.

14.    On June 26, 2002, PLCA and the Union executed an agreement which stated: "Rig Pay. Rig pay (for work bid on or after 7/1/02) will not be less than $13 per hour and the Welder will furnish the fuel, unless job specific considerations are agreed upon at the time of the contractor bidding the job." This agreement was executed by PLCA Managing Director and General Counsel J. Patrick Tielborg (on behalf of the PLCA) and John Budzinksi, then Director of Gas and Pipeline Distribution (on behalf of the Union).

15.    Since the IRS issued Revenue Procedure 2002-41, and the parties executed the agreement on June 26, 2002, PLCA contractors have been paying rig rental rates in accordance with the substantiated amounts established by the IRS. Additionally, since the issuance of the Rev. Proc., the Union welders have demanded and accepted the hourly rig rental rate deemed substantiated by the IRS. Prior to November 2006, at no time have Union welders demanded any amount other than the IRS substantiated rate for the rental of their welding rigs.

16.     In addition to the past practice of paying the IRS substantiated rate for the rental of the

Union welders' welding rigs, in 2004, PLCA and the Union executed a one-year

collective bargaining agreement that specifically included the IRS rig rental rate.

Subsection (h) of the "Special Agreement for Small Diameter Pipe Between the Pipe Line

Contractors Association and the United Association of Journeymen and Apprentices of

the Plumbing and Pipefitting Industry of the United States and Canada" ("Special

Agreement") specifically addresses the issue of the hourly rig rental rate.  It states: "Rig

Pay. Rig Pay (for work bid on or after 7/1/02) will not be less than $13 per hour and the

Welder will furnish the fuel, unless job specific consideration are agreed upon at the time

of the contractor bidding the job."

17.     This special agreement was included in the 2004-2005 collective bargaining agreement,

despite language contained in a 1999 interpretation of the previous collective bargaining

agreement, which stated that PLCA and the Union do not negotiate rig rates.  This

interpretation was added to the National Pipe Line Agreement before the Union and

PLCA agreed to jointly seek a ruling from the IRS on tax treatment of rig rental

reimbursement expenses.

18.     During negotiations for the current collective bargaining agreement, PLCA and the Union

specifically discussed the rig rental rate issue, which is evidenced by the fact that the

current collective bargaining agreement also includes several attachments which

specifically establish the applicable hourly rig rental rate as the IRS substantiated rate.

19.     Attachment 4 to the current collective bargaining agreement, referred to as the

"Mechanized Welding Agreement" specifically provides that: "[W]elder/Technicians will

be paid rig pay as follows: (1) standby - $8.00 per hour plus fuel provided by the

Employer so long as the rig is on the jobsite and available for work: (2) Used – on same basis as paid under the National Pipe Line Agreement.

20. Attachment 2 to the current collective bargaining agreement, referred to as the "Special Agreement for Station Work." provides that "[R]ig pay to be paid on the same basis as a the National Pipe Line Agreement."

21. These Attachments were negotiated and included in the collective bargaining agreement during the 2005-2010 contract, and accordingly are more recent than the 1999 interpretation which states that PLCA and the Union do not negotiate rig rental rates.

22. Following the January 2006 execution of the NPLA, Union Director of Gas and Pipeline Distribution Phil Stephenson acknowledged that the IRS deemed substantiated rate is the rig rental rate to be paid under the NPLA. Specifically, on April 24, 2006 Stephenson sent a letter to UA Local 342 Business Representative Stephen Mikich which stated: "[T]o my knowledge, the only changes are that the rig rental rate has risen to $14.00 per hour if used, and that rig rental rate is $8.50 per hour for mechanized welding jobs where the rig is parked. *These are the negotiated rates on the current National Mainline Pipeline Agreement*." (emphasis added)

23. By virtue of past practice, since at least 2002, the Union welders demanded and were paid only the IRS substantiated rate for the rental of their welding rigs for work performed under the National Pipeline Agreement.

24. On or about November 29, 2006, the Union informed PLCA that it was unilaterally increasing the hourly rig rental rate from fifteen dollars ($15) per hour to twenty five dollars ($25) per hour, in contravention to both past practice, as well as the explicit terms

of the collective bargaining agreement.  During discussions between PLCA and the Union about this issue, Union officials indicated that they would contemplate a strike if the increased amount was not paid.  Union officials also stated that should PLCA refuse to agree to pay the increased rig rental rate, Union welders would continue to show up for work, but would do so without their welding rigs.

25.    As a practical matter, Union welders will generally not work "single-hand" on PLCA contractor projects (*i.e.*, they will not work without their own welding rigs).  Moreover, given the economic realities in this industry, welders showing up to work without their welding rigs is tantamount to a strike because contractors simply do not have the number of welding rigs on hand that would be necessary for Union welders to use in performing their duties.

26.    Beginning on or about January 7, 2007, Union welders did in fact begin demanding the increased twenty five ($25) dollars per hour rate for the rental of the welding rigs.  As of on or about January 30, 2007, at least one UA constituent Local Union, Local 798, has breached the terms of the collective bargaining agreement by increasing the hourly rig rental rate paid by PLCA contractors to UA/Union welders by requiring that PLCA contractors pay an additional two hours of rig rental pay per day as a "Western Fuel Adjustment."

27.    Pursuant to the grievance/arbitration procedure contained in the PLCA/Union collective bargaining agreement, PLCA filed an amended grievance alleging that the Union's attempts to alter the terms of the collective bargaining agreement is a breach of the parties' contract.

28.    As of the date of this filing, the Union is refusing to comply with the grievance/arbitration process set forth in the parties' collective bargaining agreement. The Union is claiming that the rig rental rate is not an arbitrable dispute, despite the existence of language governing the rate in several attachments to the collective bargaining agreement, and the acknowledgement of UA Director of Gas and Pipeline Distribution Phil Stephenson in a letter dated April 24, 2006 that the IRS rate is the "current negotiated rate under the National Pipe Line Agreement."

29.    While the Union is refusing to properly arbitrate PLCA's grievance, Union welders continue to demand, in breach of the collective bargaining agreement, twenty five dollars ($25) per hour for the rental of welding rigs. PLCA contractors are forced to comply with the Union welders' unlawful demand for fear of the Union welders striking and/or withholding their welding rigs.

COUNT I – SECTION 301 CLAIM FOR BREACH OF CONTRACT

30.    In 2002, in a letter signed by then UA Director of Gas and Pipeline Distribution John Budzinski and PLCA General Counsel and Managing Director J. Patrick Tielborg, the IRS substantiated rate became the contractual hourly rate to be paid by PLCA contractors to Union welders for the rental of their welding rigs. This was reaffirmed in 2004 with the execution of the 2004-2005 collective bargaining agreement, and in 2006 through the execution of the 2005-2010 collective bargaining agreement.

31.    PLCA and the Union specifically negotiated and discussed the welding rig rental rate during the negotiations for the current, 2005-2010, collective bargaining agreement. The IRS substantiated rate was again specifically included in the current collective bargaining

agreement, as is evidenced by the language in Attachment 2 ("Special Agreement for Station Work") and Attachment 4 ("Mechanized Welding Agreement").

32.   Defendant Union's demand, beginning on or about November 29, 2006 and continuing to the present, for an increased hourly rig rental rate of twenty five dollars ($25) per hour is in violation of the parties' collective bargaining agreement.

33.   Defendant constituent Local Union No. 798's demand for an additional two hours per day of "rig pay" as a "Western Fuel Adjustment" is in violation of the agreed upon terms of the parties' collective bargaining agreement.

34.   Section 301 of the LMRA provides for suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.  Because Defendant Union has violated the collective bargaining agreement between PLCA and the UA/Union, Section 301 is applicable in this situation.

COUNT II – REFUSAL TO ARBITRATE IS ALSO BREACH OF CONTRACT

35.   The collective bargaining agreement governing the terms and conditions of employment between PLCA and the Union includes a mandatory grievance/arbitration provision.  This provision requires that the parties submit any "grievance, dispute, difference of opinion, or controversy of any kind or character between the Union and the Association and/or individual Employer signatory hereto involving or relating to the interpretation or application of the terms of this Agreement, and the relations between the parties arising during the term" of the agreement to an arbitration panel.  In the event that the arbitration panel is unable to reach a decision on the dispute, either party may demand the dispute be referred to an independent arbitrator for a final decision.

36. Because the dispute at issue (*i.e.*, the rate to be paid by PLCA contractors to Union welders for the rental of their welding rigs) necessarily is a "grievance, dispute, difference of opinion or controversy" relating to the interpretation or application of the parties' collective bargaining agreement, as well as the relations between the parties during the term of the Agreement, it is clearly subject to the grievance and arbitration procedure set forth in the collective bargaining agreement.

37. The Union's refusal to arbitrate is a breach of the collective bargaining agreement's mandatory arbitration provision.

COUNT III – THREAT TO STRIKE IS VIOLATION OF NO-STRIKE CLAUSE

38. On or about November 29, 2006, the Union informed PLCA that as of January 7, 2007, it was unilaterally, and in violation of the collective bargaining agreement, increasing the rig rental rate from $15.00 per hour to $25.00 per hour.

39. On or about November 29, 2006, the Union also informed PLCA contractors that if they refused to pay the increased amount, PLCA contractors would "have a hard time finding a sufficient number of welders" to work on their projects.

40. Since on or about January 7, 2007, Union representatives have demanded the $25.00 per hour rig rental rate at pre-job conferences, and have stated that they will not pre-job or send welders to projects where the PLCA contractors do not agree to the $25.00 per hour rig rental rate, or they will send welders to these projects without their welding rigs.

41. The parties' collective bargaining agreement contains a provision addressing work stoppages, secondary boycotts, and jurisdictional disputes. Specifically, Article XVII(A)

states that: "No local union nor the International Union, nor any representative of either, shall cause or promote a strike, slowdown, stoppage of work or any interference, directly or indirectly, with the operation and progress of the work ..."

42.     Given the nature of the pipeline construction and maintenance industry, threatening to not send welders, and/or threatening to send welders without welding rigs is promotion of a strike, slowdown, stoppage of work and/or represents interference by the Union with the operation and progress of the work, in violation of Article XVII(A) of the parties' collective bargaining agreement.

### PRAYER FOR RELIEF

WHEREFORE, PLCA prays that this Court grant the following relief:

43.     PLCA respectfully requests that this Court award it damages from the Union of any amount in excess of the negotiated contractual per hour rig rental rate, and any associated costs, paid by PLCA contractors (under protest) by any PLCA contractor in response to the Union's breach of the collective bargaining agreement.

44.     PLCA also seeks an Order requiring the Union to comply with the collective bargaining agreement.

45.     PLCA seeks any such other and further relief as the Court deems just and proper, including, but not limited to, reasonably attorneys' fees, costs and expenses incurred in these proceedings.

Respectfully Submitted, this 24th day of May, 2007

_____

Lawrence D. Levien, Esq. (D.C. Bar No. 191528)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue
Washington, D.C.  20036
Tel:  202-887-4000
Fax:  202-887-4288

**ATTORNEY FOR PLAINTIFFS**

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Pipe Line Contractors Association | United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Dallas, TX<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)    Washington, DC<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Lawrence D. Levien, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>1333 New Hampshire Avenue<br>Washington, DC 20036<br>202-887-4000 | N/A |

**II. BASIS OF JURISDICTION**
(PLACE AN X IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

● **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/* *2255* | H. *Employment* *Discrimination* | I. *FOIA/PRIVACY* *ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| K. *Labor/ERISA* *(non-employment)* | L. *Other Civil Rights* *(non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☒ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

## V. ORIGIN

◉ 1 Original
Proceeding

○ 2 Removed
from State
Court

○ 3 Remanded from
Appellate Court

○ 4 Reinstated
or Reopened

○ 5 Transferred from
another district
(specify)

○ 6 Multi district
Litigation

○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

29 U.S.C. Section 185

| VII. REQUESTED IN<br>COMPLAINT | ☐ CHECK IF THIS IS A CLASS<br>ACTION UNDER F.R.C.P. 23 | DEMAND $ TBD<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐ NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S)**
**IF ANY**        (See instruction)        YES ☐        NO ☒        If yes, please complete related case form.

DATE  May 24, 2007        SIGNATURE OF ATTORNEY OF RECORD  _____

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.        COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.        CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.        CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.        CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.        RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.